1

2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

3

4

CONWEST RESOURCES, INC.,                                    No.  C 06-5304 SBA

                   Plaintiff,                               **ORDER**

5

6

   v.                                                       [Docket Nos. 58, 63]

PLAYTIME NOVELTIES, INC., *et al.*,

7

                   Defendants.

8

9

10

        Before the Court is plaintiff ConWest Resources, Inc.'s (ConWest) motion to dismiss and to

compel arbitration [Docket No. 58], and defendants Playtime Novelties, Inc. and Thomas Sherwood's

11

12

(Playtime) motion for a stay of arbitration proceedings [Docket No. 63].  For the reasons that follow,

ConWest's motion to dismiss and compel arbitration is DENIED, and Playtime's motion for a stay of

13

14

arbitration is DENIED as moot.[1]

15

**BACKGROUND**

16

        Plaintiff ConWest Resources, Inc. is primarily in the business of producing adult entertainment,

including adult novelty items.  ConWest owns copyrights on twelve "sculptures" made from molds of

17

18

male genitalia.  ConWest also owns two trademarks for "FALCON Plus Design" novelty items.

        In May 2001, ConWest entered into a Master Licensing Agreement with Mayday LLC, which

19

20

gave Mayday the exclusive right to manufacture, market, distribute and sell the sculptures, and certain

other adult novelty items for five years.  The agreement included a provision entitled "Arbitration and

21

22

Attorney's Fees," which states:

23

24

> Any controversy or claim arising out of or relating to the terms of this Agreement, or
> breach thereof, shall be submitted to binding Arbitration in San Francisco, California in
> accordance with the Commercial Arbitration Rules of the American Arbitration
> Association, and entered in any Court having jurisdiction thereof.

25

Docket No. 63, Ex. 4 (Agreement at ¶ 45).

26

27

28

[1]     The relief Playtime seeks is essentially granted by the denial of the motion to compel arbitration.
While Playtime states that it believes that an arbitration complaint has been filed by ConWest
against Playtime, it is not clear that arbitration has in fact begun or that there are any arbitration
proceedings to stay.  *See* Docket No. 63 (Allayee Decl. at ¶ 6).

1      In 2003, Mayday LLC assigned the agreement to defendant Playtime Novelties, Inc., doing

2 business as Erostar Erotic Novelties.  Defendant Thomas Sherwood is the President of Playtime.

3      ConWest filed a complaint on August 29, 2006 and an amended complaint about two months

4 later.  Both allege copyright infringement, trademark infringement, false designation of origin, unfair

5 trade practices under California Business and Professional Code section 17200, and common law unfair

6 competition.  On October 19, 2006, Playtime filed a motion to dismiss on the grounds that "all of

7 plaintiff's claims against Playtime are subject to a binding arbitration clause."  Playtime filed another

8 motion to dismiss ConWest's first amended complaint and to compel arbitration in November.

9 ConWest did not file oppositions to either motion, but it also refused to agree to Playtime's requests to

10 arbitrate rather than litigate in this forum.

11      On September 8, 2006, ConWest filed a motion for a preliminary injunction, seeking to enjoin

12 Playtime from further using its copyrights and registered marks.  Playtime filed its opposition to

13 ConWest's motion for preliminary injunction on October 24, 2006.  ConWest claims from Playtime's

14 opposition it learned "for the first time that during the term of the contract Playtime had sold its 'entire

15 inventory' of Falcon® products to its affiliated company, Anything Distributors Incorporated ("ADI"),

16 and that the sale extinguished ConWest's copyright and trademark rights pursuant to the 'first sale'

17 doctrine."  Docket No. 60, at 3:13-17.  ConWest further alleges that only when Playtime asserted those

18 contract-based defenses, did ConWest conclude "that the case could not be comprehensively adjudicated

19 absent its assertion of claims for breach of contract and breach of the implied covenant of good faith and

20 fair dealing, which claims were within the exclusive purview of the arbitration clause in the contract."

21 *Id.* at 4:5-9.

22      On November 17, 2006, the Court denied plaintiff's motion for preliminary injunction. *See*

23 Docket No. 53.  On November 27, 2006, Playtime withdrew its motions to dismiss and filed answers

24 and counterclaims.  The next day, ConWest notified Playtime that ConWest would file a complaint in

25 arbitration.  ConWest sought Playtime's stipulation to dismissal of this action and provided Playtime

26 with a copy of its arbitration complaint.  In its arbitration complaint, ConWest alleges breach of

27

28

2

contract, breach of the implied covenant of good faith and fair dealing, fraud, and its previously asserted copyright, trademark, and unfair business practices claims. Playtime informed ConWest that Playtime would not stipulate to dismissal of this action.

## LEGAL STANDARDS

The Federal Arbitration Act (FAA) provides that arbitration agreements governed by the Act "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA was created to "reverse the longstanding judicial hostility to arbitration agreements" and "to place arbitration agreements on the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Section 2 of the FAA evinces "a liberal federal policy favoring arbitration agreements, not withstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Waiver of a contractual right to arbitration is not favored. *Lake Commc'ns., Inc. v. ICC Corp.*, 738 F.2d 1473, 1477 (9th Cir. 1984), *overruled on other grounds*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 632-35 (1985). The party arguing waiver bears a heavy burden of proof, and must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts. *Hoffman Constr. Co. of Oregon v. Active Erectors & Installers, Inc*., 969 F.2d 796, 798 (9th Cir. 1992), *cert. denied*, 507 U.S. 911 (1993); *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). More is required than action inconsistent with an arbitration provision; prejudice to the party opposing arbitration must also be shown. *Fisher*, 791 F.2d at 694. Any doubts as to waiver are resolved in favor of arbitration. *See Moses H. Cone*, 469 U.S. at 24-25.

## ANALYSIS

The parties now concur that the arbitration agreement applies to the parties' dispute. At issue is whether ConWest has waived its right to compel arbitration under that agreement. Playtime contends

3

1    that ConWest has waived it right to arbitration under the parties' contract and that it should be estopped

2    from filing an arbitration claim.  In order to carry its heavy burden of demonstrating waiver of the

3    arbitration provision, Playtime must establish (1) ConWest knew of its right to compel arbitration; (2)

4    that ConWest acted inconsistently with that right; and (3) that Playtime will be prejudiced as a result

5    of those inconsistent acts.

6

7    **1.      ConWest's Knowledge of its Right to Compel Arbitration**

8    ConWest claims "when it filed this action for copyright and trademark infringement and unfair

9    business practices, [it] did not assert any breach of contract claim or rely on any disputed terms of the

10    contract."  Docket No. 60 (Pl.'s Mot. to Dismiss at 9:28-10:1-2).  Therefore, ConWest alleges "it had

11    no basis to believe its claims were subject to the arbitration clause in the contract and no knowledge of

12    any right to arbitrate its copyright/trademark/unfair business practices claims, which were premised

13    solely on post-contract termination conduct."  *Id.* at 10:2-5.  It was not until Playtime asserted its "first

14    sale" defense in its opposition to plaintiff's motion for preliminary injunction on October 24, 2006, that

15    ConWest had its "first indication" that breach of the Agreement would be a component of the resolution

16    of the disputes.  Only then, did ConWest believe the case "had transformed into one that did fall within

17    the scope of the arbitration agreement."  Docket No. 67 (Pl.'s Opp'n at 4:22-25).

18    Playtime asserts ConWest "clearly had knowledge of its right to compel arbitration."  Docket

19    No. 63 (Defs.' Mot. for Stay at 8:15-16).  ConWest signed the agreement which specifically contained

20    an arbitration clause.  Playtime repeatedly attempted to obtain ConWest's consent to arbitrate its claims.

21    ConWest rejected such requests, forcing Playtime to file two motions to dismiss this action and compel

22    arbitration.  Playtime suggests because ConWest lost its motion for preliminary injunction, ConWest

23    "now no longer wishes to have its claims heard by this Court."  *Id.* at 5:12-16.

24    ConWest's claim that it had no knowledge that its copyright and trademark claims were

25    encompassed by the arbitration agreement is less than fully persuasive.  The agreement contains a broad

26    arbitration clause: "[a]ny controversy or claim arising out of or relating to the terms of this Agreement,

27

28    4

1  or breach thereof, shall be submitted to binding Arbitration . . . ."  Language such as "relating to"

2  indicates an arbitration clause considerably broader in reach than one limited to disputes "arising out

3  of" certain dealings.  *See Tracer Research Corp. v. National Envt'l. Servs. Co.*, 42 F.3d 1292, 1295 (9th

4  Cir. 1994).  ConWest's original claims are certainly "relating to," if not "arising out of" the agreement.

5  The agreement gave rise to the licensing relationship between ConWest and Playtime, and defined the

6  terms of that contractual relationship.  Indeed, ConWest admits that "[t]he crux of [its] claims was that

7  defendants violated applicable copyright and trademark laws, and laws prohibiting unfair business

8  practices, by 'continuing to reproduce, sell, and distribute the previously licensed sex novelty products

9  in the United States' after the license it granted to defendants expired on January 1, 2006."  Docket No.

10  60 (Pl.'s Mot. to Dismiss at 3:3-8).  Clearly, ConWest based its original claims on the termination of

11  the licensing relationship, which was created and defined by the agreement.  If there were any doubts

12  as to the arbitrability of ConWest's original claims, Playtime's motions to dismiss put ConWest on

13  ample notice of its existing right to arbitration.

14        Moreover, if as alleged, ConWest had its "first indication" of the possible contractual disputes

15  on October 24, 2006, when Playtime filed its opposition to ConWest's motion for preliminary

16  injunction, ConWest could have agreed to Playtime's request for arbitration then.

17        Finally, ConWest's own admissions are telling when it states that it was surprised and

18  disappointed with the Court's ruling on its motion for preliminary injunction, and that "getting a

19  preliminary injunction from an Article III Judge had been a motivating factor in choosing to file the case

20  in federal court."  Docket No. 67 (Pl.'s Opp'n at 7:15-19).  This suggests that the filing of the action in

21  this Court was a result of ConWest's deliberate choice, not because of ConWest's alleged ignorance of

22  its right to arbitration.

23

24  **2.      Acts Inconsistent with the Right to Compel Arbitration**

25        ConWest asserts because it believed that its original claims were outside the scope of the

26  arbitration agreement, "the filing of such claims cannot be construed as a waiver of the right to

27

28                                                          5

1   arbitrate." Docket No. 60 (Pl.'s Mot. to Dismiss at 10:14-16). ConWest also points to the fact that it

2   did not file any opposition to Defendants' motions to dismiss. *Id.* at 10:20-21.

3          Playtime argues that by filing the original complaint in this Court, resisting Playtime's request

4   for arbitration, and ultimately forcing Playtime to file motions to dismiss, ConWest has "acted

5   inconsistently with its right to arbitration." Docket No. 63 (Defs.' Mot. for Stay at 8:19-25).

6          While filing a complaint itself does not waive the right to pursue arbitration, intentionally

7   electing a judicial forum rather than an arbitral forum is a factor that may be weighed. *See Iowa Grain*

8   *Co. v. Brown*, 171 F.3d 504, 509 (7th Cir. 1999). Here, ConWest declared that "getting a preliminary

9   injunction from an Article III judge had been a motivating factor in choosing to file the case in federal

10  court." This shows ConWest's intention to elect a judicial forum rather than seek relief under the terms

11  of the agreement to arbitrate.

12         ConWest also refused Playtime's repeated requests for arbitration, which is certainly inconsistent

13  with its right to arbitrate. In an October 11, 2006 letter, ConWest declared that it was alleging copyright

14  and trademark infringement claims which "does not constitute a controversy or claim arising out of or

15  relating to the terms of the Master Licensing Agreement." *See* Docket No.63, Ex. 2. Again, the

16  language of the arbitration agreement is very broad and covers "[a]ny controversy or claim arising out

17  of or relating to the terms of this Agreement." Thus, ConWest's refusal to arbitrate was based upon a

18  dubious premise: their copyright and trademark infringement claims do not trigger the arbitration

19  provision of the licensing agreement between the parties, but a breach of contract claim of that same

20  licensing agreement does. Refusing to arbitrate based upon a contrived distinction is acting in a manner

21  inconsistent with ConWest's right to arbitrate.

22         Moreover, if as alleged, ConWest had its "first indication" of the possible contractual disputes

23  on October 24, 2006, when Playtime filed its opposition to ConWest's motion for preliminary

24  injunction, ConWest could have agreed to Playtime's request for arbitration then, but chose not to do

25  so.

26

27

28                                                          6

1   **3.      Prejudice to Playtime**

2        Playtime alleges prejudice due to: (a) deprivation of Playtime's likely success on the merits of

3   a future summary judgment motion; and (b) duplication of efforts due to litigation of substantially the

4   same issues in another forum.

5        **a.      Deprivation of this Court's Finding of a Likelihood of Success**

6        Playtime argues that "[i]n attempting to place its claims before a different tribunal, Plaintiff is

7   in essence seeking to deprive Defendants of their likely success on Plaintiff's claim by virtue of a future

8   summary judgment motion." Docket No. 66 (Defs.' Mot. to Stay at 13:15-17). ConWest counters that

9   a preliminary injunction motion is not an adjudication of the merits of a case. Playtime is reading too

10  much into the Court's denial of the preliminary injunction motion. The Court merely ruled, based on

11  a preliminary assessment of the facts and law, that ConWest did not demonstrate a likelihood of success

12  on its claims. In the course of discovery ConWest may be able to buttress its contentions. It cannot be

13  said that a future summary judgment motion will likely be granted in Playtime's favor and therefore the

14  deprivation of that ruling prejudices Playtime. This is far too speculative to base a finding of prejudice

15  upon.

16        What may be fairly inferred from the context of ConWest's repeated refusals to arbitrate, and

17  then seeking arbitration after an unfavorable ruling on its preliminary injunction motion, is that

18  ConWest is seeking an alternative forum sensing an adverse ruling in this one. Such use of arbitration

19  as a method of forum shopping would be prejudicial to Playtime. *See, e.g., St. Mary's Med. Ctr. of*

20  *Evansville, Ind., v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 589 (7th Cir. 1992) ("A party may not

21  normally submit a claim for resolution in one forum and then, when it is disappointed with the result

22  in that forum, seek another forum"); *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991) ("Prejudice

23  can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to

24  relitigate the issue by invoking arbitration"); *Jones Motor Co. v. Chauffeurs, Teamsters & Helpers Local*

25  *Union*, 671 F.2d 38, 43 (1st Cir. 1982), *cert. denied*, 459 U.S. 943 (1982) ("to require that parties go to

26  arbitration despite their having advanced so far in court proceedings before seeking arbitration would

27

28                                       7

1   often be unfair, for it would effectively allow a party sensing an adverse court decision a second chance

2   in another forum"); *see also J.D. Fegely, Inc. v. Kline Iron & Steel Co.*, 1989 WL 71549, at \*3 (E.D.

3   Pa. 1989) (finding prejudice when a plaintiff refused the defendant's repeated demands for arbitration,

4   and then later attempted to invoke the arbitration clause).

5               **b.        Duplication of Efforts**

6               Playtime maintains that it would be seriously prejudiced if it is forced to re-litigate the same

7   issues in arbitration.  A duplication of efforts and litigation of substantial issues going to the merits may

8   constitute prejudice.  *See Stifel, Nicolaus & Co. v. Freeman*, 924 F.2d 157, 159 (8th Cir. 1991).

9               Courts have also found waiver where the party seeking arbitration allows the opposing party to

10  undergo the types of litigation expenses that arbitration was designed to alleviate, such as by filing

11  substantive motions.  *See, e.g., PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 108-09 (2d

12  Cir. 1997); *St. Mary's Med. Ctr., Inc. v. Disco Aluminum Prod. Co.*, 969 F.2d 585, 589 (7th Cir. 1992)

13  (finding waiver where party moved to dismiss and for summary judgment without mentioning

14  arbitration until after motions were lost); *Weight Watchers of Quebec Ltd. v. Weight Watchers Int'l, Inc.*,

15  398 F. Supp. 1057, 1060-61 (E.D.N.Y. 1975).

16              The Court need not decide whether a preliminary injunction motion is a substantive motion in

17  the same sense as a summary judgment motion.  By urging its preliminary injunction despite repeated

18  requests to arbitrate, ConWest forced both Playtime and this Court to expend considerable time and

19  resources analyzing its claims, just as would be expended upon a summary judgment motion.  And while

20  the Court's ruling on the preliminary injunction motion is in no sense binding or a final finding on the

21  merits, most of the same facts and legal issues are likely to be a part of any future motions.   In

22  *WorldSource Coil Coating, Inc. v. McGraw Constr. Co.*, 946 F.2d 473, 478 n.7 (6th Cir. 1991), the court

23  stated that the plaintiffs would likely suffer prejudice in the form of duplicative expenses incurred when

24  the plaintiffs filed an answer, the court held a hearing on the defendant's request for a preliminary

25  injunction, and the plaintiffs filed counterclaims.  Such is the case here.  Playtime has filed an answer,

26  the Court has held a hearing on ConWest's request for a preliminary injunction, and Playtime has filed

27

28                                                            8

1  counterclaims.  The expenses would likely be duplicated if these matter were to proceed in another

2  forum, which would be prejudicial to Playtime.

3     Finally, it should be noted that ConWest maintained that it did not agree to arbitration before a

4  ruling on the preliminary injunction motion because "[p]ulling the case from Judge Armstrong at that

5  juncture would have produced substantial delay" and "cost the parties just as much, if not more, in both

6  time and attorneys fees." Docket No. 72 (Pl.'s Reply at 8:16-19). ConWest offers little explanation how

7  this perceived prejudice to it before the preliminary injunction ruling was issued is any less applicable

8  to Playtime afterwards.

9     ConWest asserts that if it is not allowed to compel arbitration that "[i]t will be denied the

10  benefits of its arbitration agreement: the 'simplicity, informality and expedition of arbitration' of its

11  disputes with defendants . . . ." Docket No. 60 (Pl.'s Mot. to Dismiss at 9:1-3). This wound, however,

12  is self-inflicted in light of ConWest's repeated refusals to submit its claims to arbitration.  As both

13  parties acknowledge, the arbitration agreement covers this dispute. ConWest knew of its right to compel

14  arbitration and acted inconsistently with that right thereby prejudicing Playtime in the process.

15  ConWest has therefore waived its right to compel arbitration.

16

17                       **CONCLUSION**

18     While it is a heavy burden to demonstrate that a party has waived its right to compel arbitration,

19  Playtime has done so.  Accordingly, ConWest Resources, Inc.'s motion to dismiss and to compel

20  arbitration [Docket No. 58] is DENIED, and defendants Playtime Novelties, Inc. and Thomas

21  Sherwood's motion for a stay of arbitration proceedings [Docket No. 63] is DENIED as moot.

22     IT IS SO ORDERED.

23

24   May 1, 2007          _____
                    Saundra Brown Armstrong

25                      United States District Judge

26

27

28                     9